The Court will now call Case No. 523-0763, the matter of E.W. v. his mother and next friend, Chandra Johnson, and A.M. v. her father and next friend, Antonio Brown, against the Board of Education of East St. Louis School District No. 189. I am Justice Moore presiding, along with Justice Barberos and Justice Shoulder. Are the parties ready to proceed? You may come forward. Please state your name for the record and you may proceed. After you get situated at your table. I'm not hurrying into you. You may. I please the court and counsel. Your Honor, my name is Susan Simone from Land of Lincoln Legal Aid and I represent. Excuse me, counsel. Can you come a little forward toward the microphone? I cannot hear you very well. Yes, Your Honor, my name is Susan Simone from Land of Lincoln Legal Aid and I represent the plaintiffs E.W. and A.M. Your Honor, the core of this lawsuit asks, what is defendant's obligation under 105 ILCS 5-29-4 in light of the public purpose of keeping all school's children safe when they go to and from school? Our argument has always been and remains that section 29-4 requires defendant to provide safe school bus transportation to plaintiffs just as it does for students that attend the defendant's schools. 29-4 states school boards shall provide transportation to non-public school students. The use of shall is mandatory. The question must be viewed in light of the legislative purpose and the answer must uphold that legislative purpose. 50 years ago, the Illinois Supreme Court in Board of Education versus Bacalus held that 29-4 was enacted for the legislative purpose of protecting the health and safety of children traveling to and from non-public school. Bacalus noted that traveling by school bus was safer than walking for various reasons including inclement weather and safety from persons who would do children harm. This purpose is, this served an important public purpose of getting all school children safer to school. In Bacalus, the public school district complained that they had to add two buses to transport all the school children, but that was irrelevant because 29-4 requires non-public school students to be transported on the same basis as public school students. The Supreme Court reiterated in their marriage of lap that it is the Illinois legislature that decides in the first instance what is the public good and what serves public purposes. It was noted in Forrest Mortgage that the legislative intent is ever paramount and statutory construction. In Bacalus, the court ruling 29-4 was enacted in 1933, over 90 years ago. Chancellor, if I may, I'm going to fast forward just a bit. Yes. It's my understanding that East St. Louis School District provided bus service in the past to students of, I'm going to call it Bowman, to shorten that. What is your understanding of what changed from the past to where we are now? My understanding from the deposition of Dr. Torriginian is that he was directed by Superintendent Culver to stop transporting the Sister Thea Bowman students, the Bowman students. He did not provide a reason in his deposition when pressed. He just merely said we're interpreting the statute, we're doing what the statute says, but would not provide any No, not at all. So they had operated for however many years? 2007. From 2007 until the point that they refused and the statute, to your knowledge, had not changed during that time frame? In 2018, there was an amendment to the statute that allowed school districts to transport children who live within one and a half miles of the school they attend to get free bus transportation if the school district found that the school was in an unsafe area due to criminal activity or due to vehicular traffic. Again, violence? Correct, and East St. Louis did apply for that exception and was granted that exception. So the statute then became broader, essentially? That's correct, and even during the COVID pandemic, the governor reimbursed schools at 100% for all transportation of public and non-public school students. Thank you. I do want to point out that East St. Louis does get reimbursed at the same rate whether they transport public school students or non-public school students that come within the statutory obligations. Well, with regard to that 2018 amendment, is that something that the school district has to apply for each year? Yes. So have they applied, to your knowledge, have they applied for that since they stopped busing the kids? At the time of Dr. Torriginian's deposition, we had two reimbursement sheets and they were attached as exhibits to our cross-motion for summary judgment that showed that they were receiving reimbursement for that grant and that they were receiving reimbursement for that grant for some Sister Thea Bowman students. Reimbursement is done the year after the school year ends or the summer after the school year ends. So at least up to that point, at the time of deposition, they had received reimbursement for the last two years that they transported Bowman students. Explain to me, counsel, what was happening? What part of the school day were they going to the private school and what part of the day were they going to the public school and for what classes? All of the Bowman students were going to Sister Thea Bowman only. They were not attending any district schools. From 2007 until 2011 when CEK litigation occurred, Bowman students were transported on days, as I understand it, on days that they had school. After CE, they were transported on days that District 189 had school, but they were transported from near their home. So this is only about bus transportation to and from the private schools? That's correct. My understanding is that there are bus routes along the routes that include Bowman schools. Is that correct? That is correct. And that would, you tell me, would that meet the plain definition of the statute then, the requirements of the statute? The statute requires, that last, the last part of the first sentence of the first paragraph explains that you can either, you can, you take regular routes. If the students live on the, near a regular route, they are eligible for transportation to their school. So regular route modifies near their homes. It doesn't modify where they get dropped off. The second part of that clause says, or regular routes near the school, then to their, then they go home. So the school district has a lot of flexibility in the statute to determine which routes to use to bring students from near their home, which is the eligibility threshold, to their school. They can use, they can use the routes near their home, they can use the routes near their school, they can use a separate route, or districts that have a separate high school district can use high school routes. Okay. And what we understand, these students live within the district, is that correct? These students live within the district. There are numerous buses, District 189, there are numerous buses that go near Doppers homes and go near Warbrothers homes that take children to the district schools, but they leave the Bowman students behind. So what reason did the superintendent give for stopping the service? We did not depose the superintendent. We only deposed Dr. Troyer-Jimien, who was the director of transportation at the time this decision was made. Okay, what reason did that person give? He said that they told the school district that they were not going to transport Bowman students and that manually they had been accustomed because they were just going to follow the statute, and ultimately said a couple of times he just did what he was told. He was told not to route Bowman students and he didn't route Bowman students. Did he say who told him? He said that Superintendent Culver told him not to route the Bowman students. He did not provide any explanation even when pressed. Did nobody ever depose that superintendent? No, we deposed Dr. Troyer-Jimien on June 27th, and I believe the motions for summary judgment was filed the next day when we presented because this really is an issue of what does this statute mean? And we have very different views on what this statute means, reading the same clauses. It is, and I would like to point out that Judge Lachine and Judge Katz also have very different opinions on what this statute means. If this is remanded for consideration of the injunctive relief and the declaratory relief that we have asked for, perhaps we will need to do additional depositions, but we need guidance from the court on what this statute means. Are you referring to the now deceased Judge Lachine or Judge Elaine Lachine? I'm sorry, I am referring to Judge Robert Lachine who heard this very similar fact pattern, actually a different fact pattern, but again not providing transportation from the All right, question. There was a lot of discussion, I believe in the police brief, about the appellant's varying positions on this case. Can you address that because I'm not quite clear on what the different positions may have been? I am not clear on what the different positions are either. I think that it is a red herring, to be honest, Your Honor. We have not changed positions. We have maintained that the statute provides a mandatory duty on the district to provide Bowman students with transportation from their home to their school. How the district does that is up to them. They are given flexibility, but that is not a change in our interpretation of the statute. It is still a mandatory duty to provide all children within the district, including the Bowman students, with that transportation. So I believe in the past the school district had provided a bus service entirely, is that correct? That is correct. And you recognize that the statute doesn't necessarily require that, correct? I recognize that, yes. That is an option available for the district to choose. Thank you. This is one last follow-up to Justice Moore's questions. Did the doctor that was deposed, did he at some point tell someone that the reason the school bus driver shortage? Yes, he made that representation to Sister Thea Bowman principals and interim principals. And the answer to the complaint, which was verified by Dr. Toraginian, admitted that they told the school that it was a school bus driver shortage that resulted in their stopping transportation for Bowman students. However, as I stated at the deposition, Dr. Toraginian indicated that he assumed that, he wasn't told that, and he said that the reason he stopped the transportation was because he was directed not to route the students. Were there other inquiries from other schools, private schools? Yes, there was. There was an inquiry in April of the year that, so the school year in which they stopped routing Sister Thea Bowman began in August, and a couple of months prior to that, Unity Lutheran had inquired about transportation for one of its students, and the East St. Louis Charter School also inquired about bus transportation. And the Dr. Toraginian indicated that they did not want to take on another expense, and so they did not transport any of those other students. How can it be another expense when they're reimbursed? They are not fully reimbursed. They are reimbursed, all students, all transportation is reimbursed at the same rate by the state, but it's not 100% reimbursement. It's a formula the state has, and it doesn't matter if it's a public school student or a non-public school student, they all get reimbursed. What about the issue of safety? Was there evidence about that? About? Safety. Safety? Well, I would point out that the college made findings about safety of children that it was much more safe to transport children by bus than by car or for children to walk. Was there specific evidence about violence or safety in the routes the children would have to walk? Not in the college that I am aware of, but in this case we did, and I mean in this case, in this case we talked to Dr. Toraginian about the School Safety Act that allows for the criminal, if there's criminal activity in the area, or vehicular safety, and there were reports from the Washington Police and I believe the East St. Louis Police that indicated criminal activity in East St. Louis in such that they were eligible, and they submitted that as part of their application for reimbursement under the Safety Act, and that was granted. So Washington Park is also involved in this? Washington Park is also part of District 189. Okay, so essentially then by applying for and receiving that grant, they were stipulating the fact that they're in a district that qualifies for those safety concerns. That's correct, and there's some portions of the district qualified under those safety concerns of criminal gang activity. Okay. So I ask your honors that you reverse the trial court's granting of the motion for summary judgments, declare the defendants required to provide safe transportation for the Bowman students, and remand for the injunctive relief. Thank you. Thank you, counsel. You will have an opportunity for rebuttal. Any questions from the justices? Counsel for Appellee, please state your name for the record. Yes, ma'am. Please declare the counsel. My name is Garrett Horner. I represent Defendant Appellee East St. Louis School District Number 189. I would like to begin just to clarify some of the factual matters that arose, and I think it will shed some light and assist in the statutory interpretation. But by way of background, the previous, as Justice Schorler indicated, separate bus routes is not required. It's permitted, and the district did operate separate bus routes for Sister Thea Bowman's students. And at the time that this similar issue came before this court back in 2012, over the holidays, and this court made a decision interpreting 29-4. At that point, the district had previously afforded bus transportation on non-district school days, but then ceased it. And then this court made a determination that that was not contemplated by the statute. And so here, there was a period of time from 2015 or possibly earlier until 2022 where separate bus routes were utilized by the district as permitted by the statute, but not required by the statute. So what changed? I know that was a question that arose, and as plaintiff alleges in the complaint, the district told Sister Thea Bowman that they were experiencing, or their transportation company they contracted out, was experiencing a driver shortage. Of course, as this court knows, there have been transportation issues with drivers, whether it be Metro, Bi-State, ATS, and I'm just recounting some Sacred County transportation systems that had similar issues. And that is pointed out on the record, not just from the allegation that was made by the plaintiff in the complaint, that that defendant admitted. But do I have a shortage or not? Are they statutorily required to provide transportation to the Bowman students? They are not statutorily required to provide a separate bus route. All right, but aren't they statutorily required to provide bus services? Yes, on existing routes. And so it was, what was told to Sister Thea Bowman was they weren't going to have separate routes because of a lack of driver, or because of a driver shortage. And at the record, at CD-299 is a transcript of Dr. Torajibian's deposition testimony, and he was asked the question, do you know why he made that decision? Make reference to Superintendent Colbert. Answered, ma'am, we were short on drivers and we were doing anything to try to make those buses run on time. The bus company at the time, I think for the grand majority of school year 22-23, they were doing good, turnover considered, to have enough buses and bus drivers, well buses were never a consideration, but enough bus drivers just to get all of our regular routes covered. So at that time, the separate bus route, which again is not required by 29-4, and that's not disputed, was eliminated. So then it gets to the regular routes. Now, there's nothing in the record that the plaintiffs had ever identified what regular routes they decided to ride on. But why would the plaintiffs have to identify, wouldn't that be in the school district to identify the bus routes? Well, actually, Your Honor, what happened was there was a meeting, and it occurred back in the fall, shortly after this case was filed, and there was a meeting with representatives of the district and representatives of plaintiffs, and at the time, Sister Theobald's School, who was a party, they later voluntarily dismissed. But Dr. Kortergien was asked, do you recall a meeting on November 7, 2022, at the district administration building, where we were there, Ms. Simone was there, John Barr-Civic was there, and Ms. Simone said, I was on the phone, by telephone, and then Dr. Kortergien said, I remember the meeting. Sister Theobald and representatives were there, yes, I remember that meeting, and at that meeting, did you present the existing regular routes and all the routes that District 189 had for its students? Yes, whatever was asked for, I presented it. So, without, I'd like an opportunity to get into what the statutory requirements are, but the existing routes were presented in a meeting, and as the trial court noted, there was nothing in the record that indicated a specific route that was desired. What's always been desired, I think, in this case, was a separate bus route, which is not required. Then it became a shifting interpretation, trying to get door-to-door bus service for the private school students. And so... But hasn't your opponent just said that they are not asking for a specific route, they are simply asking that the district provide bus service, just like the two other schools that reached out to East St. Louis, and East St. Louis in fact told them, no, they would not allow bus service as well, correct? What they're asking for is not the bus service that's contemplated by the Section 29-4, what they're asking for is something greater than that. And that's what the court ruled, was that based on the trial court's interpretation of 29-4, that there is no identified existing route that's desired. So at this point, there's nothing to publish, to base with that interpretation any relief. So let me ask a question, and we're going to give you plenty of time. You're our last floor of argument today. We can be here until after the clock. I'm going to, I'm going to. But with regard to, you know, just these routes and where these students are located, just for simplistic reasons, my understanding is that the plaintiffs live in an area where the school bus comes and picks up private or public school kids, right? What is the problem with picking them up as well? I'm assuming it's because the public school kids are delivered to the public school and not to the private school. Is that really the issue here? No, the issue is that existing route, what is the proximity of that route to the private school? Because there may be a route, and again, all these routes were shown to the plaintiffs. But there may be a route that goes by a particular student's home, but the statute only requires that you go to, you stay on the route and you go to a point that's closest or nearest the school. And so what you have in a District 29 is you have, while there's private school maybe on one edge of town, the bus routes go by various areas and deliver us to different schools. So I think one of the issues is that there wasn't a route identified by the plaintiffs because there probably was not a route that was as desirable to them in proximity to the school that went by their home. So it's not a matter of the kids not living close to the school bus route, it's the school itself where they need to be delivered to or picked up in the afternoon. That's correct. So what the statute says, it's 29-4, is that such transportation to extend from some point on the regular route nearest or most easily accessible to their homes, to and from the school, or to or from a point on such regular route which is nearest or most easily accessible to the school attended by such children. So the idea, and this was something that was addressed by this court back in 2012 in CE versus East St. Louis School District, and that is do you have to go off route or are we addressing existing routes? And back in 2012, the opinion concluded that you don't have to, quote, go out of your way. That the interpretation of... But counsel, isn't that related to school days where the public school was out of school and the private school was, in fact, in school? Right? That wasn't about geographic location because doesn't that case specifically state that the plaintiffs met the requirements of the distance from their school and the location around the regular route? It was really more about school days in that case, right? It really was, but it defined the scope as well. It interpreted the scope of 29-4 with respect to whether or not you have to go off your route. And those particular quotes from Justice Walsh's opinion conclude when he was discussing legislative intent, he said, quote, the school buses are not required to go out of their way to transport non-public school students. Then he went on to say section 29-4 simply allows non-public school students to utilize the public school district's existing bus transportation and nothing more. And he concluded by saying, we will not read into the statute a requirement which the legislature did not expressly include, especially one which places such a heavy additional burden on our already burdened public school districts. But does it make any sense statutorily, you know, interpreting the statute, that it would, you know, pick up a kid? So let me back up. My understanding is that the school district has, maybe all school districts use these, some kind of a computer program that sets up all of the routes for these buses. And so mid-semester, mid-term, a new student enrolls in the district, and they happen to live someplace not on a current route. They get plugged into the system, into this computer program. And the program reroutes the bus to make sure that they're picked up and brought to the public school. Yes, VersaTrain is a software system that's utilized, and I think that's referenced in the plaintiff's appellate's brief. But the issue with that is that's a public school student on an existing route that doesn't change where it's going. They're going to put that student on a route to go to that public school. And that is pursuant to section 29-3, which has obligations for your own students, for district students. And 29-4 are different obligations for your private school students. But 29-4 provides the service needs to make sense and keep the students safe, is that correct? In terms of where it drops off and picks up for any student that qualifies for that? By way of just clarifying what was referenced about the statutory amendments. First, the safety aspects that are put forth by the plaintiff appellate are related to a Supreme Court case where there was a challenge to the constitutionality of the 29-4 because they claimed it was non-secular. The court determined that it was secular, so it's constitutional. And the court used public policy reasons associated with the safety of school busing. But most notably, for purposes of our case, what our Supreme Court did in back of this is they stated consistently with section 29-4 of the school code that that section, quote, requires a school board to provide the same transportation along its regular school bus routes for non-public school pupils as it provides for its public school pupils. So the whole concept of this statute is that public school district, you've got a route existing that you're already running. If there's a private school or charter school student who lives on or near a route like that, they can get on that route and they can get off that route at the point of that route that is most accessible to the private school. It's akin to what I'll call a bi-state bus. In St. Clair County, we call it a metro bus. It's got a fixed route, and that's fixed to service the public school students. And you can get, as a private school student or charter school student, you can get on that bus along that route and you can get off that bus along that route, and that's what 29-4 contemplates. And that's where you get a language from back of the list that talks about it's along a regular existing bus route, and it's where you get a language from this Court's decision in 2012 and CE where you don't have to go out of your way. And so I think that's the statutory obligation of 29-4, and that's what this Court held in 2012. That's what Judge Katz held or filed in 2023, and I think that's an accurate interpretation of the statute. So, Counselor, you're saying that if the route goes to the public school, it drops the public school students off at the public school, but the private school students don't get dropped off at their school. They get dropped off somewhere along the route at a point nearer to the private school. Is that what you're saying? That's correct. 29-3 requires public school districts to provide what amounts to either door-to-door service or school door to a point within one-and-a-half miles of the home, but normally it's closer than that. But you can have a pickup point under 29-3 that is not necessarily right outside your door, but it's supposed to be within one-and-a-half miles. Except for the 2018 amendment, which I suppose we're talking about most of the areas. That's slightly different. Okay, the 2018 amendment was an amendment to 29-3, not an amendment to 29-4. But what you were talking about just now is 29-3. I was talking about the requirements. So generally, 29-3 before the 2018 amendment said that you had to live one-and-a-half miles or beyond from the school in order to qualify to have mandatory bus transportation. And if you live within a mile and a half, then you are not required to receive, and I'm talking about public school students, you're not required to receive bus transportation. Except there was an exception where IDOT could certify that it's a dangerous route because there may be a railroad crossing or a five-lane highway. In which case, if that's certified, then you came with school-provided transportation. That exception was augmented to include high crime areas in 2018. And that has to be certified by the, if I recall correctly, Illinois State Police based on crime data that the district submits. And then if you qualify for that under 29-3, then you can be transported as a public school student within a mile and a half. But the requirements under 29-3, in the language of 29-3, are different than 29-4. And that's because the obligations are different. If the General Assembly wanted the transportation to be the same, identical, I believe that they very well should have or could have made the language of those sections identical. And there is language in 29-4 that talks about on the same basis as public school students. And that's something that was referenced by counsel. But that language is, if you look at it, it's qualified that if you are within one and a half miles, then you're going to get transportation on the same basis as a public school student. So what that means is, if the public school district qualifies for the exception, and they're giving somebody transportation within that one and a half miles radius, then that can also serve as a basis for the non-public school student to get public school to provide transportation, but subject to the restrictions of 29-4. But doesn't 29-4 say such transportation to extend from some point on the regular route nearest, or most easily accessible to their homes? And it goes easily accessible to their homes to extend from some point on the regular route nearest, or most easily accessible to their homes. Yes, so if you have a route that goes within a block of your house, you can get on that at that block away. And you can get off that bus at any point on this regular route. And it's nearest to the school. That's what it says is. Yes, it does say most easily accessible to the school. So in my mind, doesn't that say that you're picking, as long as it's a regular route, you're picking a child up as close to the regular route and dropping them off as close to the school as possible along the regular route. Correct? Yes, and that's what the child court found, was that you have to stay along the existing route. Child court basically said, well, you have to do that, but we're not going to take you. If I remember correctly from the briefs, one of the kids involved is three miles from the school, is the closest area on the route to the school. To drop that child off would be about three miles to their school. And the child court said, you don't have to get any closer than that. That's the closest point along the route to drop the child off. Correct? Correct, because to do it otherwise would modify an existing regular route. Or in the words of Justice Walsh, you'd be going out of your way. And so what the trial court did was that based on that interpretation, and based upon the lack of anything in the record to suggest that there was an identified existing regular route that plaintiffs wanted to utilize, there was no relief to be granted based upon that, because, of course, injunctions have to be specific in size, et cetera, for the reasons in the law that's set forth in the briefs. But the appellants are basically saying, hey, that's not reasonable to drop a kid three, I'm not sure the kid's age, but regardless of their age, drop them three miles away from their school and expect them to get there unscathed in New St. Louis. We want you to get closer to the school. Just drop them off at the school. That's basically what they're asking. I believe that is what the plaintiff appellant's latest interpretation of the statute seeks. I'm trying to make this simple so I can understand it. No, no. I'm trying to simplify it for you. I'm trying to simplify it for me. I need all the help I can get, Your Honor. Any other questions from the justices? Okay. Thank you, Counselor Anderson. Thank you, Your Honor. We'll hear from the appellant in rebuttal. Thank you, Your Honors. No, Justice Barberos, that was exactly what we were asking for. Pick up where you get routes from near their homes, drop them off at Sister Thea Bowman and reverse it. That's what they do for their own students. The statute never says existing routes. The statute refers to regular routes, and it refers to regular routes in two contexts, just as Shuler was getting to. The first part is that pick them up on regular routes that go near their homes and then bring them to their school, or you can use regular routes near their school and bring them and transport them that way along those lines. Do the routes change from year to year? Does the school district change routes? Yes, they do. Yes, they do. Do you know why they change the routes? It is based on where students live, and my understanding is based on where students live and how many students live in that area, because they have restrictions on how many students can be transported on a bus, which is why they have so many regular routes near dumpers and near oil weathers. Here's my understanding from Dr. Torriginian's. There was some discussion in the briefs about open and enrollment students, and they're essentially homeless students. For the most part, yes. All right, and there was some explanation that I didn't quite completely understand, but those students are bussed from different areas all across the district, correct? That is correct. All right, and that's done, and I think they call them capture areas? Catchment. Catchment areas. All right. Is that something that Sister Vona would be inclined to agree with? Do they think that that's appropriate for their students? Yes, we do. That would require a separate route, we believe, but— But if the school district wanted to do that, they could. Yes, or what they do for open enrollment students, my understanding is they pick them up at, say, oil weathers, and they bring them to Katie White School, which is a school they used to attend before they became homeless. Whereas if they were at oil weathers, I believe they would attend, I believe, Dunbar. I'm not sure about the names. But because of their rights under McKinney-Vento, they have the right to be transported to the school that they were attending to minimize disruption, and those students are placed in the open enrollment. So the regular—I believe Dr. Torriginian testified that they take routes from near Katie White, would go with that student, and then bring them to— I think what I'm getting at is that routes have to change all the time. Is that accurate? Yes, all the time. Thank you. Yes. So how many students are involved at the Sister Vona School? At the time the complaint was filed, we understood there were about 30 students who lived within the District of 189 who would be eligible for the transportation. Good. Thank you. The driver shortage issue, I understand what Mr. Humber read up at C-299, but if you continue reading on, you will see that Dr. Torriginian said he was not told there was a driver shortage. He just assumed there was a driver shortage. He was just told, don't route these kids, and he didn't route these kids. He was following orders. That's what he was doing. In the meeting in the fall, the settlement conference, Judge John Grossivich submitted an affidavit, which is attached to our reply brief, that said we were not— there was really no discussion of what routes could be provided for the students. It was not a settling conference in that we were not provided a route that the children could get to school on. In fact, during the deposition with Dr. Torriginian, I suggested one route, and they said, no, you don't want to put the kids on that route. So there was just no intention to route these kids, period. And they came up with excuses, but the intention was, we're just not going to do it anymore. Not for any non-public school kids in East St. Louis. I would like to also point out, on the same basis as repeatedly used, it's used in Bacallus. It's used in 29-4 with that last sentence about when students live within one and a half miles. I believe that's the amendment to the Safety Act. And then it's also used in the Reimbursement Regulation 23, Illinois Administrative Code 120.30, that states, you know, public school students get free transportation, which is—I'm sorry. Non-public school students get transportation on the same basis as public school students. That is the public policy amendment. Thank you. Thank you, counsel. This court will take this case under advisement and issue its decision in due course.